~~SEALED~~
ORIGINAL

FILED IN CHAMBERS
U.S.D.C. Atlanta

DEC 0 2 2009

JAMES N. HATTEN, Clerk
By: _Amber Sewell_
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL INDICTMENT |
| | : | |
| v. | : | NO. **1:09CR0520** |
| | : | |
| JUNA GWENDOLYN BABB and | : | |
| MICHAEL J. BABB | : | ~~UNDER SEAL~~ |

THE GRAND JURY CHARGES THAT:

### COUNT ONE

Beginning in or about March 2005, and continuing until on or about February 7, 2007, in the Northern District of Georgia and elsewhere, Defendants JUNA GWENDOLYN BABB and MICHAEL J. BABB, and other persons whose identities are known to the grand jury, did combine, conspire, confederate, agree, and have a tacit understanding to:

(A) knowingly provide and obtain the labor and services of "T.H." by means of a scheme, plan, and pattern intended to cause "T.H." to believe that, if "T.H." did not provide such labor and services, "T.H." would suffer serious harm, and by means of the abuse and threatened abuse of the law and legal process, in violation of Title 18, United States Code, Sections 1589;

(B) knowingly confiscate and possess immigration documents belonging to "T.H.," including her passport, with intent to violate Title 18, United States Code, Section 1589,

that is, to provide and obtain the labor and services of
"T.H." by means of a scheme, plan, and pattern intended
to cause "T.H." to believe that, if "T.H." did not
provide such labor and services, "T.H." would suffer
serious harm, and by means of the abuse and threatened
abuse of the law and legal process, in violation of Title
18, United States Code, Section 1592; and

(C) knowing and with reckless disregard of the fact that
"T.H.," an alien, came to, entered, and remained in the
United States in violation of the law, conceal, harbor,
and shield "T.H." in a place from detection by
immigration and other law enforcement authorities, and
attempt to do so, for the purpose of commercial advantage
and private financial gain, in violation of Title 8,
United States Code, Sections 1324(a)(1)(A)(iii) and
(B)(i).

## INTRODUCTION

1. At all times relevant to this indictment, Defendants JUNA
GWENDOLYN BABB and MICHAEL J. BABB, were husband and wife to one
another.

2. At all times relevant to this indictment, Defendants JUNA
GWENDOLYN BABB and MICHAEL J. BABB resided at 4262 Ivy Run in
Ellenwood, DeKalb County, Georgia.

2

3. At all times relevant to this indictment, the victim, "T.H.," was a citizen of the Kingdom of Swaziland, Africa, who entered the United States pursuant to a B1/B2 tourist visa that was issued on May 3, 2005, and scheduled to expire on August 5, 2005.

4. At all times relevant to this indictment, the B1/B2 tourist visa obtained by "T.H." on May 3, 2005, did not authorize "T.H." to lawfully work in the United States.

## OBJECT OF THE CONSPIRACY

It was the object of Defendants JUNA GWENDOLYN BABB and MICHAEL J. BABB's conspiracy to recruit "T.H." to travel from the Kingdom of Swaziland, Africa, to the United States, to compel "T.H." to perform, and to continue performing, domestic labor and services, and nanny services in the defendants' home, and to perform housekeeping and home renovation labor and services in the homes of other persons at the defendants' direction, all for the defendants' commercial advantage and private financial gain.

## MANNER AND MEANS OF THE CONSPIRACY

1. As a part of the conspiracy, Defendants JUNA GWENDOLYN BABB and MICHAEL J. BABB caused "T.H.," a native of the Kingdom of Swaziland, Africa, to travel to the United States by falsely promising to generously pay "T.H." to cater a wedding for the defendants' son.

2. As a part of the conspiracy, Defendants JUNA GWENDOLYN BABB and MICHAEL J. BABB represented to "T.H." that the defendants

3

were wealthy entrepreneurs who owned businesses within, and outside of, the United States, and that Defendant MICHAEL J. BABB  was a minister.

3.    As a part of the conspiracy, Defendants JUNA GWENDOLYN BABB and MICHAEL J. BABB, and other persons whose identities are known to the grand jury, caused "T.H." to travel to the United States with the intent to force "T.H." to work as a housekeeper, and nanny in the defendants' home and elsewhere.

4.    As a part of the conspiracy, Defendant JUNA GWENDOLYN BABB instructed "T.H." to obtain a passport and tourist visa to travel to the United States, but not to disclose to immigration officials that the defendants intended to employ "T.H." once she arrived in the United States.

5.    As a part of the conspiracy, Defendant JUNA GWENDOLYN BABB took possession of immigration documents belonging to "T.H.," including her passport and visa, upon the arrival of "T.H." to the United States.

6.    As a part of the conspiracy, Defendants JUNA GWENDOLYN BABB and MICHAEL J. BABB, upon the arrival of "T.H." in the United States, compelled "T.H." to work for seven days per week, and from the early morning hours until late at night, as the defendants' housekeeper, and nanny for their infant grandchild.

7.    As a part of the conspiracy, Defendants JUNA GWENDOLYN BABB and MICHAEL J. BABB compelled "T.H." to perform housekeeping

4

services for friends of the defendants, for which "T.H." was either underpaid, or not paid at all.

8.   As a part of the conspiracy, Defendant MICHAEL J. BABB compelled "T.H." to assist him in construction labor and home renovation jobs that he obtained for his construction business, "M&J Construction and HVAC."

9.   As a part of the conspiracy, Defendants JUNA GWENDOLYN BABB and MICHAEL J. BABB rarely paid "T.H." for her labor, and withheld wages from "T.H." when the defendants did so.

10.  As a part of the conspiracy, Defendant JUNA GWENDOLYN BABB misrepresented to "T.H." the amount of money that the defendants earned for services performed by "T.H." for the defendants' acquaintances.

11.  As a part of the conspiracy, Defendants JUNA GWENDOLYN BABB and MICHAEL J. BABB caused "T.H." to believe that, as a result of the expiration of "T.H.'s" tourist visa and illegal status in the United States, "T.H." would be arrested and jailed by immigration officials if "T.H." attempted to leave the defendants' home and employ.

12.  As a part of the conspiracy, Defendants JUNA GWENDOLYN BABB and MICHAEL J. BABB caused "T.H." to believe that "T.H." was severely indebted to the defendants for the cost of her travel to the United States, and for living expenses the defendants' claimed

that "T.H." accumulated during the time that she lived with the defendants.

13. As a part of the conspiracy, Defendants JUNA GWENDOLYN BABB and MICHAEL J. BABB attempted to, and did, isolate "T.H." from her family, friends, and outsiders, by placing T.H." in fear of law enforcement detection and imprisonment due to her illegal status in the United States, and all for the purpose of concealing the defendants' unlawful conduct from authorities.

14. As a part of the conspiracy, Defendants JUNA GWENDOLYN BABB and MICHAEL J. BABB compelled "T.H." to work for themselves, and on behalf of others, from in or about June 2005, through on or about February 7, 2007, for the purpose of obtaining commercial advantage and private financial gain.

## OVERT ACTS

1. In or about March 2005, Defendants JUNA GWENDOLYN BABB and MICHAEL J. BABB met "T.H." in Swaziland, Africa, and hired "T.H." for what the defendants represented to be a catering job for their son's wedding in the United States.

2. In or about March 2005, Defendant JUNA GWENDOLYN BABB instructed "T.H." to obtain a passport and visa, but not to disclose to immigration officials that "T.H." would be working for the defendants in the United States.

3. On or about March 29, 2005, Defendants JUNA GWENDOLYN BABB and MICHAEL J. BABB provided "T.H." with a type-written

letter, using the professional letter-head of MICHAEL J. BABB's ministry, "Michael Babb International Outreach Ministry," and in which the defendants falsely claimed that "T.H." would be traveling to the United States, at the defendants' expense, as a visitor to attend the wedding of the defendants' son.

4.   In or about March 2005, Defendant JUNA GWENDOLYN BABB instructed "T.H." to give the defendants' letter, dated March 29, 2005, to immigration officials.

5.   In or about May 2005, Defendant JUNA GWENDOYN BABB provided "T.H." with the money to obtain a passport and visa.

6.   In or about June 2005, Defendant JUNA GWENDOYN BABB purchased a round trip airline ticket for "T.H." to travel from Africa to and from Atlanta, Georgia.

7.   On or about June 13, 2005, Defendant JUNA GWENDOLYN BABB, after transporting "T.H." to the defendants' residence in Ellenwood, Georgia, ordered "T.H." to give her airline ticket, passport, and visa to Defendant JUNA GWENDOLYN BABB.

8.   On or about June 13, 2005, upon the arrival of "T.H." at the defendants' residence, Defendant JUNA GWENDOLYN BABB ordered "T.H." not to speak with any of the defendants' children about the wedding of the defendants' son, not to leave the defendants' home because several of the defendants' neighbors had been murdered in the neighborhood, and not to disclose the defendants' address or telephone number to anyone.

7

9. On or about June 13, 2005, upon the arrival of "T.H." at the defendants' residence, Defendant JUNA GWENDOLYN BABB informed "T.H." that the defendants were leaving the United States to return to Africa for approximately one week and that, during that time, "T.H." was required to remain at the defendants' home to care for the defendants' infant grandchild.

10. In or about June 2005, upon Defendants JUNA GWENDOLYN BABB and MICHAEL J. BABB's return from Africa, "T.H." confronted Defendant JUNA GWENDOLYN BABB about whether the defendants had been truthful about causing "T.H." to travel to the United States to cater the wedding of their son, whereupon Defendant JUNA GWENDOLYN BABB disclosed to "T.H." that the defendants intended to compel "T.H." to work as the defendants' housekeeper without pay.

11. In or about June 2005, after "T.H." told Defendants JUNA GWENDOLYN BABB and MICHAEL J. BABB that "T.H." wished to return to her home in the Kingdom of Swaziland, Africa, Defendant MICHAEL J. BABB told "T.H." that she could not leave the defendants' employ because the defendants "owned" her.

12. In or about June 2005, Defendant JUNA GWENDOLYN BABB refused to return to "T.H." her airline ticket, passport, and visa and instead, told "T.H." that "T.H." must work for the defendants to repay costs incurred by the defendants due to "T.H.'s" travel to the United States.

8

13.   In or about June 2005, following the arrival of "T.H." at the defendants' residence, Defendant JUNA GWENDOLYN BABB ordered "T.H." not to use the defendants' telephone, because law enforcement officers were able to listen to telephone calls and, therefore, could discover that "T.H." was in the United States illegally and arrest her.

14.   On about August 5, 2005, after "T.H.'s" visa had expired, Defendant JUNA GWENDOLYN BABB warned "T.H." that "T.H." was in the United States illegally and therefore, if "T.H." attempted to leave the defendants' residence and employ, immigration officials would come to the defendants' residence during the night, arrest "T.H." in her night gown, and jail her.

15.   From in or about December 2005, through in or about December 2006, Defendant JUNA GWENDOLYN BABB caused "T.H." to provide house cleaning services to "P.G.," an acquaintance of Defendant JUNA GWENDOLYN BABB, for which the defendants received payments between $75.00 to $150.00 from "P.G." for the services of "T.H."

16.   From in or about December 2005, through in or about December 2006, Defendant JUNA GWENDOLYN BABB occasionally paid "T.H." only $40.00 of the payments the defendants received from "P.G." for "T.H.'s" labor.

17.   In or about December 2006, after "T.H." injured her back while performing work for the defendants, Defendants JUNA GWENDOLYN

BABB and MICHAEL J. BABB initially denied medical treatment for "T.H."

18.   In or about December 2006, after "T.H." was bedridden for several days with back pain, Defendant JUNA GWENDOLYN BABB took "T.H."to Grady Memorial Hospital in Atlanta, Georgia, but after warning "T.H." to pretend that "T.H." could not speak English, lied to hospital personnel about the nature of "T.H.'s" injury, all resulting in "T.H." receiving no treatment for her back injury.

19.   Beginning in or about June 2005, and continuing through on or about February 7, 2007, Defendants JUNA GWENDOLYN BABB and MICHAEL J. BABB compelled "T.H." to work as their housekeeper and nanny for their infant grandchild, knowing that "T.H." was in the United States illegally, and for which the defendants grossly underpaid "T.H." on those occasions that "T.H." was paid at all.

20.   Beginning in or about June 2005, and continuing through on or about February 7, 2007, Defendant MICHAEL J. BABB, who owned a construction company called "M&J Construction and HVAC Inc.," compelled "T.H." to assist him with remodeling work, including carpentry work, counter top, carpeting and floor installation, and painting, for which Defendant MICHAEL J. BABB grossly underpaid "T.H."

All in violation of Title 18, United States Code, Section 371.

10

## COUNT TWO

1.     Paragraphs 1 through 4 of the "Introduction," 1 through 14 of the "Manner and Means of the Conspiracy," and 1 through 20 of the "Overt Acts" of COUNT ONE, are realleged and incorporated by reference herein.

2.     From on or about June 13, 2005, and continuing until on or about February 7, 2007, in the Northern District of Georgia and elsewhere, Defendants JUNA GWENDOLYN BABB and MICHAEL J. BABB, aided and abetted by each other, and by other persons whose identities are known to the grand jury, did knowingly provide and obtain the labor and services of "T.H.," by means of a scheme, plan, and pattern intended to cause "T.H." to believe that, if "T.H." did not provide such labor and services, "T.H." would suffer serious harm, and by means of the abuse and threatened abuse of the law and legal process, all in violation of Title 18, United States Code, Sections 1589.

## COUNT THREE

1.     Paragraphs 1 through 4 of the "Introduction," 1 through 14 of the "Manner and Means of the Conspiracy," and 1 through 20 of the "Overt Acts" of COUNT ONE, are realleged and incorporated by reference herein.

2.     From on or about June 13, 2005, and continuing until on or about February 7, 2007, in the Northern District of Georgia, Defendant JUNA GWENDOLYN BABB, did knowingly confiscate and possess

the actual passport and visa of "T.H.," with intent to violate Title 18, United States Code, Sections 1589, that is, to provide and obtain the labor and services of "T.H.," by means of a scheme, plan, and pattern intended to cause "T.H." to believe that, if "T.H." did not provide such labor and services, "T.H." would suffer serious harm, and by means of the abuse and threatened abuse of the law and legal process, all in violation of Title 18, United States Code, Section 1592(a)(1).

## COUNT FOUR

1.     Paragraphs 1 through 4 of the "Introduction," 1 through 15 of the "Manner and Means of the Conspiracy," and 1 through 22 of the "Overt Acts" of COUNT ONE, are realleged and incorporated by reference herein.

2.     From on or about June 13, 2005, and continuing until on or about February 7, 2007, in the Northern District of Georgia, Defendants JUNA GWENDOLYN BABB and MICHAEL J. BABB, aided and abetted by each other, and by other persons whose identities are known to the grand jury, did knowing and in reckless disregard of the fact that "T.H.," an alien, came to, entered and remained in the United States in violation of the law, did knowingly conceal, harbor, and shield "T.H." in a place, that is the defendants' personal residence located at 4262 Ivy Run in Ellenwood, Georgia, from detection by immigration and other law enforcement authorities, and attempt to do so, for the purpose of commercial

advantage and private financial gain, all in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(iii) and (B)(i), and Title 18, United States Code, Section 2.

## COUNT FIVE

1.    Paragraphs 1 through 4 of the "Introduction," 1 through 14 of the "Manner and Means of the Conspiracy," and 1 through 20 of the "Overt Acts" of COUNT ONE, are realleged and incorporated by reference herein.

2.    On or about August 28, 2009, Defendant JUNA GWENDOLYN BABB, in Fulton County within the Northern District of Georgia, in a matter within the jurisdiction of the United States Department of Justice, a department within the executive branch of the United States, did knowingly and willfully make materially false, fictitious and fraudulent statements and representations to Special Agents of the Federal Bureau of Investigation and Immigration and Customs Enforcement, during an interview regarding allegations that her husband, Co-defendant MICHAEL J. BABB, and she had harbored "T.H." and compelled "T.H.'s" labor and services, by stating that "T.H." had not worked for the defendants as a housekeeper and nanny, and that the defendants did not purchase "T.H's" airline ticket to the United States from Africa, when in truth and in fact, Defendant JUNA GWENDOLYN BABB then knew that "T.H." had worked as the defendants' housekeeper and nanny during the dates alleged in COUNTS ONE through FOUR herein, and that the defendants purchased

13

the airline ticket for "T.H." to travel to the United States from Africa.

All in violation of Title 18, United States Code, Section 1001.

### COUNT SIX

1.      Paragraphs 1 through 4 of the "Introduction," 1 through 14 of the "Manner and Means of the Conspiracy," and 1 through 20 of the "Overt Acts" of COUNT ONE, are realleged and incorporated by reference herein.

2.      On or about September 18, 2009, Defendant MICHAEL J. BABB, in Fulton County within the Northern District of Georgia, in a matter within the jurisdiction of the United States Department of Justice, a department within the executive branch of the United States, did knowingly and willfully make materially false, fictitious and fraudulent statements and representations to Special Agents of the Federal Bureau of Investigation during an interview regarding allegations that his wife, Co-defendant JUNA GWENDOLYN BABB, and he had harbored "T.H." and compelled "T.H.'s" labor and services, by stating that "T.H." had not worked for the defendants as a housekeeper and nanny, when in truth and in fact, Defendant MICHAEL J. BABB then knew that "T.H." had worked as the defendants' housekeeper and nanny during the dates alleged in COUNTS ONE through FOUR herein.

14

All in violation of Title 18, United States Code, Section 1001.

FORFEITURE PROVISION

1.    Upon conviction of the offense alleged in COUNT ONE of this Indictment, Defendants JUNA GWENDOLYN BABB and MICHAEL J. BABB shall forfeit to the United States pursuant to Title 18, United States Code, Section 1594, Title 18, United States Code, Section 981(a)(1)(C), as incorporated by Title 28, United States Code, Section 2461, and/or Title 8, United States Code, Section 1324(b), as incorporated by Title 28, United States Code, Section 2461, any property, real or personal, constituting or derived from proceeds traceable to a violation of said section; any property, real or personal, used or intended to be used to commit or to facilitate the commission of a violation of said section; and any conveyance that has been or is being used in the commission of the offense, the gross proceeds of such conveyance, and any property traceable to such conveyance or proceeds, including but not limited to:

(a)   4262 IVY RUN, ELLENWOOD, DEKALB COUNTY, GEORGIA, and all buildings and appurtenances thereon, more particularly described as follows:

All that tract or parcel of land lying and being in Land Lot 4 of the 15th District, DeKalb County, Georgia being Lot 42, Block A of Holly Hills according to plat recorded in Plat Book 105, Page 96, DeKalb County, Georgia records, which plat is incorporated herein by reference thereto for a more accurate and complete description.

(b)   a sum of money representing the amount of proceeds obtained as a result of the offense.

15

2. Upon conviction of one or more of the offenses alleged in COUNTS TWO and THREE of this Indictment, Defendants JUNA GWENDOLYN BABB and MICHAEL J. BABB shall forfeit to the United States pursuant to Title 18, United States Code, Section 1594, and Title 18, United States Code, Section 981(a)(1)(C), as incorporated by Title 28, United States Code, Section 2461, any property, real or personal, constituting or derived from proceeds traceable to a violation of said section, and any property, real or personal, that was used or intended to be used to commit or to facilitate the commission of such violations, including but not limited to:

(a)   4262 IVY RUN, ELLENWOOD, DEKALB COUNTY, GEORGIA, and all buildings and appurtenances thereon, more particularly described as follows:

All that tract or parcel of land lying and being in Land Lot 4 of the 15th District, DeKalb County, Georgia being Lot 42, Block A of Holly Hills according to plat recorded in Plat Book 105, Page 96, DeKalb County, Georgia records, which plat is incorporated herein by reference thereto for a more accurate and complete description.

(b)   a sum of money representing the amount of proceeds obtained as a result of the offense.

3. Upon conviction of the offense alleged in COUNT FOUR of this Indictment, Defendants JUNA GWENDOLYN BABB and MICHAEL J. BABB shall forfeit to the United States pursuant to Title 8, United States Code, Section 1324(b), as incorporated by Title 28, United States Code, Section 2461, and Title 18, United States Code, Section 982(a)(6), any conveyance, including any vessel, vehicle, or aircraft, used in the commission of the offense, any property,

16

real or personal, constituting, derived from, or traceable to the
proceeds obtained directly or indirectly from the commission of the
offense, and any property, real or personal, used, or intended to
be used, to facilitate the commission of the offense, including but
not limited to:

(a)  4262 IVY RUN, ELLENWOOD, DEKALB COUNTY, GEORGIA, and all
     buildings and appurtenances thereon, more particularly
     described as follows:

     All that tract or parcel of land lying and being in
     Land Lot 4 of the 15th District, DeKalb County,
     Georgia being Lot 42, Block A of Holly Hills
     according to plat recorded in Plat Book 105, Page
     96, DeKalb County, Georgia records, which plat is
     incorporated herein by reference thereto for a more
     accurate and complete description.

(b)  a sum of money representing the amount of proceeds
     obtained as a result of the offense.

4.  If any of the above-described forfeitable property, as a
result of any act or omission of the defendants:

(a)  cannot be located upon the exercise of due diligence;

(b)  has been transferred or sold to, or deposited with, a
     third party;

(c)  has been placed beyond the jurisdiction of the court;

(d)  has been substantially diminished in value; or

(e)  has been commingled with other property which cannot be
     divided without difficulty;

it is the intent of the United States, pursuant to 18 U.S.C.
982(b) and 21 U.S.C. § 853(p), to seek forfeiture of any other

17

property of said defendant(s) up to the value of the forfeitable property described above.

A _____ BILL

_____
FOREPERSON

SALLY QUILLIAN YATES
ACTING UNITED STATES ATTORNEY

_____
STEPHANIE GABAY-SMITH
ASSISTANT UNITED STATES ATTORNEY
600 U.S. Courthouse
75 Spring Street, S.W.
Atlanta, GA 30303
404/581-6000 (telephone)
404/581-6181 (facsimile)
Georgia Bar No. 663519

_____
RICHARD S. MOULTRIE, JR.
ASSISTANT UNITED STATES ATTORNEY
600 U.S. Courthouse
75 Spring Street, S.W.
Atlanta, GA 30303
Atlanta, GA 30303
Georgia Bar No. 527275

_____
KARIMA G. MALONEY
U.S. DEPARTMENT OF JUSTICE, TRIAL ATTORNEY
CIVIL RIGHTS DIVISION, CRIMINAL SECTION
601 D Street, N.W., Room 5200
Washington, D.C. 20004
202/307-3212 (telephone)
202/514-8336 (facsimile)
Texas Bar No. 24041383

18